**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

GOVERNMENT EMPLOYEES INSURANCE COMPANY, *

Plaintiff, *

v. * Civil Action No. AW-07-0542

MOSTCHOICE.COM, INC., *

*

Defendant.

* * * * *

**MEMORANDUM OPINION**

This action involves claims for service mark infringement, dilution, and unfair competition brought by Plaintiff Government Employees Insurance Company ("Plaintiff" or "GEICO") against Defendant Mostchoice.com, Inc. ("Defendant" or "Mostchoice"). Currently pending before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 5). On April 20, 2007, the parties filed a Joint Stipulation on Jurisdictional Discovery (Paper No. 9), which the Court granted (Paper No. 10). Jurisdictional discovery is now complete and the motion is ripe for decision. The Court has reviewed the entire record, including the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will deny Defendant's motion to dismiss.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to Plaintiff and are gleaned primarily from Plaintiff's Complaint. GEICO is a Maryland corporation and leading provider of automobile insurance products and services. GEICO offers and advertises its products and services throughout the country. GEICO began doing business in 1936, and has since become the fourth largest private-passenger auto insurance company and the largest direct marketer of auto insurance

in the United States. GEICO owns several federal service mark registrations on marks GEICO uses in connection with its products and services. On its website, GEICO offers, among other things, insurance quotes for GEICO insurance products and services. No other website is authorized to provide a GEICO auto insurance quote, and an accurate GEICO insurance quote is not available from any source other than GEICO.

Mostchoice is a Georgia corporation that owns and operates the Mostchoice website, an Internet-based lead generation website which offers information about insurance and financial related services and products to Internet consumers. Mostchoice does not sell any service or product to consumers; rather, Mostchoice contracts with agents and brokers of insurance and other financial services, who prepay for leads generated from the Mostchoice website. To accomplish this, the Mostchoice website allows a consumer to fill out forms that solicit various data from the consumer. After completing the form, the consumer is informed that Mostchoice has received the consumer's information, and that an agent will contact the consumer to give and explain quotes. The consumer is also provided a list of providers and is advised that, in order to obtain the greatest savings, the consumer should check out at least the top three providers from the generated list.

Mostchoice uses GEICO's registered marks as well as other words and phrases in a variety of ways to draw traffic to its website. For example, Mostchoice uses GEICO marks as text and metatags in its webpages so as to increase the chance of being returned as a high ranked search result when an Internet consumer uses GEICO marks, or similar marks, as search terms in a keyword search. Plaintiff claims that consumers viewing these Mostchoice webpages have no way of knowing that Mostchoice has no affiliation with GEICO and is not authorized to quote GEICO rates or to sell GEICO auto insurance. When consumers receive quotes from GEICO's competitors via the Mostchoice website, they may erroneously believe that they are not eligible for GEICO auto

insurance, and, and based upon that false assumption, may purchase auto insurance from a GEICO competitor without ever being provided a GEICO quote.

Plaintiff filed this action on March 5, 2007, alleging service mark infringement, trademark dilution, and unfair competition in violation of the federal Lanham Act. Defendant moved to dismiss the action on April 5, 2007, arguing that the semi-interactive website and Defendant's contacts with the State of Maryland are insufficient to confer personal jurisdiction over Mostchoice. In its Opposition to the Motion, Plaintiff lists several facts which were uncovered in jurisdictional discovery. *See* Pl.'s Opp. to Mot. to Dismiss at 2-3. For example, Plaintiff discovered that on over 20,000 different occasions, Defendant has collected the personal data of Maryland residents through its website, selling 13,612 of those leads to Defendant's customers. Defendant has also entered into at least 267 contracts with Maryland businesses, generating over $550,000 in revenues for Defendant. Plaintiff further claims that Mostchoice specifically targets its advertising efforts towards Maryland residents. Since 2006, Mostchoice has arranged for Google to display advertisements for the Mostchoice website whenever Internet users search for one of over 450 Maryland-related words or phrases. *See* Ex. B to Pl.'s Opp. to Mot. to Dismiss. Mostchoice admits to sending thousands of emails to Maryland residents since the year 2000. *See* Ex. C to Pl.'s Opp. to Mot. to Dismiss. Furthermore, Mostchoice declares on its website that Defendant has "agents throughout MD from Baltimore to Columbia." *See* Ex. H to Pl.'s Opp. to Mot. to Dismiss.

**STANDARD OF REVIEW**

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir.1993) (citing *Combs v. Bakker*, 886

F.2d 673, 676 (4th Cir. 1989)); *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986). When, as here, the district court decides a pretrial personal jurisdiction dismissal motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Mylan*, 2 F.3d at 60 (citing *Combs*, 886 F.2d at 676). The Court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff. *Id.* (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctr., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).

## DISCUSSION

### A. Personal Jurisdiction

A federal district court may only exercise jurisdiction over a non-resident defendant in the manner and extent authorized by state law in the forum state unless a federal statute establishes an alternative basis for exercising personal jurisdiction. *See* Fed. R. Civ. P. 4(k); *ePlus Tech. v. Aboud*, 313 F.3d 166, 175 (4th Cir. 2002). Thus, in a diversity case, a federal court only has personal jurisdiction over a party if a state court in the federal court's forum state would have personal jurisdiction. *Copiers Typewriters Calculators, Inc v. Toshiba*, 576 F. Supp. 312, 318 (D. Md. 1983). To evaluate whether personal jurisdiction exists in a diversity case, a federal court will engage in a two-part analysis. First, the court will determine whether the state long-arm statute authorizes the exercise of jurisdiction in the particular circumstances presented. Second, if the court finds that the long-arm statute permits the court to exercise jurisdiction, the court must then consider whether such an exercise of jurisdiction comports with the due process standards of the Fourteenth Amendment. *Carefirst*, 334 F.3d at 396; *Christian Sci. Bd. of Dir. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

Because Plaintiff filed this action in federal court in Maryland, this Court must first examine

whether it may exercise personal jurisdiction over the defendants under Maryland law. Maryland's long-arm statute provides, in pertinent part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State; . . .
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . .

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (2006). Courts have interpreted Maryland's long-arm statute as coterminous with the limits of the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry and the two inquiries become one." *Id.*

The exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause only where the defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941-42 (4th Cir. 1994). As explained in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), the jurisprudence of minimum contacts developed to determine whether a defendant had a surrogate presence in the state. *Id.* at 623. Thus, a court must focus its inquiry on whether "a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and . . . render the exercise of

sovereignty just, notwithstanding the lack of physical presence in the state." *Id.* Where a defendant purposefully availed himself of the privilege of conducting business in a particular forum, the defendant has sought both the benefits and protections of that state's laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In such situations, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*; *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002).

In considering the question of personal jurisdiction, the Supreme Court has drawn a distinction between "specific" and "general" jurisdiction. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction exists where a suit "arises out of" a defendant's contacts with the forum state. *Id.* General jurisdiction, which confers jurisdiction over a non-resident defendant in a suit wholly unrelated to any contact the defendant has with the forum, exists only where the defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 414-15. The level of contact required for the exercise of general jurisdiction is significantly higher than that required for specific jurisdiction. *ESAB Group*, 126 F.3d at 628.

GEICO argues that Mostchoice's transactions of business in Maryland are sufficient to confer this Court with specific jurisdiction over Defendant. Particularly, GEICO argues that Mostchoice's provision of services to Maryland businesses gives rise to the allegations of this suit. Moschoice is in the business of selling informational leads. According to Plaintiff, Mostchoice secures these leads by deceptively luring Internet consumers to its website through the use of GEICO's service marks. With respect to Internet activities, the Fourth Circuit has instructed that a court may, consistent with due process, exercise personal jurisdiction over a nonresident defendant where that defendant "1) directs electronic activity into the State, 2) with the manifested intent of engaging in business or other interactions within the State, and 3) that activity creates, in a person

within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). There is no dispute here that Plaintiff's claims are cognizable in Maryland courts. There is also no dispute that Mostchoice has directed electronic activity into Maryland. The only question is whether Mostchoice has done so with the expressed aim of engaging in business within the state.

Because the Court has confined its consideration of the motion to the papers and has not conducted an evidentiary hearing, Plaintiff need only make a *prima facie* showing of personal jurisdiction in order to defeat Defendant's motion. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). The Court must also resolve all factual disputes and make all reasonable inferences in favor of Plaintiff. *Mylan Labs., Inc. v. Akzo,* 2 F.3d 56, 60 (4th Cir. 1993). Here, it is clear that Plaintiff has made a *prima facie* showing that Defendant purposefully directed electronic activity into Maryland for the purpose of conducting business in the State. Defendant admits to sending thousands of emails into Maryland. Furthermore, Defendant extracts consumer data through forms on its website, and electronically sends this information—some of which is obtained from Maryland residents—to its customers, including Maryland businesses. Defendant has also made arrangements with Internet search engines such as Google to display advertisements for Defendant's website whenever an Internet user searches for Maryland-related words or phrases. These facts, when taken in the light most favorable to Plaintiff, are sufficient to establish a *prima facie* case that Defendant has purposefully transacted business in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).[1] As such, Defendant's motion to dismiss for lack of personal jurisdiction must be denied.

[1] Defendant's statement on its website touting that Mostchoice "has agents throughout MD from Baltimore to Columbia" may also be sufficient to make a *prima facie* showing that Defendant engages in a persistent course of conduct in the State of Maryland, conferring this Court with jurisdiction over Defendant pursuant to subsection (b)(4) of the long-arm statute.

The Court will direct Defendant to answer or otherwise respond to Plaintiff's Complaint. Meanwhile, the Court will be issuing a Scheduling Order in this case.

**CONCLUSION**

For all of the reasons stated above, the Court will DENY Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 5). An Order consistent with this Opinion will follow.

Date: August 10, 2007

/s/
Alexander Williams, Jr.
United States District Judge